Exhibit C

Electronically Filed 8/4/2022 2:54 PM
Sarah Loucks, District Clerk
Bastrop County, Texas
By: Sharon Schimank, Deputy

2152-335

## CAUSE NO. _____

| | | |
|---|---|---|
| **WADE HEIMANN,** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **AMERISAVE MORTGAGE** | § | **_____JUDICIAL DISTRICT** |
| **CORPORATION; DOVENMUEHLE** | § | |
| **MORTGAGE, INC.; and FEDERAL** | § | |
| **HOME LOAN MORTGAGE** | § | |
| **CORPORATION,** | § | |
| | § | |
| *Defendants.* | § | **OF BASTROP COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION

COMES NOW the Plaintiff, Wade Heimann ("Plaintiff"), complaining of the defendants as named above, and would show the Court as follows:

### I. THE PARTIES

1.     Plaintiff is an individual residing in Bastrop County, the State of Texas.

2.     Defendant, Amerisave Mortgage Corporation ("Amerisave") is a Georgia corporation doing business in Bastrop County, Texas. Amerisave may be served through their registered agent CSC – Lawyer's Incorporating Service Company at 211 E. 7th Street Suite 260, Austin, Texas 78701.

3.     Defendant Dovenmuehle Mortgage, Inc. ("Dovenmuehle") is a Delaware Corporation doing business in Bastrop County, Texas. Dovenmuehle may be served through their registered agent CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

4.     Defendant, Federal Home Loan Mortgage Corporation ("Freddie Mac") is a nationally chartered corporation doing business in Bastrop County, Texas.

Copy from re:SearchTX

## II. JURISDICTION

5.　　The property made subject of this suit is located within the County of Bastrop, State of Texas at 137 Little Sandy Drive, Elgin Texas 78621 (the "Property"). Venue is proper in Bastrop County, Texas pursuant to Section 15.011 of the Texas Civil Practice & Remedies Code.

6.　　The amount in controversy is within the jurisdictional limits of this Court.

## III. DISCOVERY CONTROL PLAN AND RULE 47 STATEMENT

7.　　Plaintiffs intend discovery to be conducted under Level 2 of the Texas Rules of Civil Procedure, Rule 190.2.

8.　　Plaintiffs seek monetary relief of less than $100,000.

## IV. FACTUAL ALLEGATIONS

### A.　THE MORTGAGE LOAN

9.　　 On or about February 4, 2022, Plaintiff entered into a home equity loan transaction with Amerisave in which Plaintiff borrowed $170,000 secured by the Property (the "Loan"). The security instrument was filed in the Bastrop County Property Records as No. 202202921.  *See* Exhibit 1 – 2022 Security Instrument.  The security instrument identifies the Loan as a Texas Home Equity Loan governed by the Texas Constitution, article XVI, section 50(a)(6).

10.　　Upon information and belief, the Loan is currently owned by Freddie Mac.

11.　　Upon information and belief, the current mortgage servicer of the Loan is Dovenmuehle.

12.　　The following violations of Texas Law occurred at or near the time of closing:[1]

    a. Plaintiff and the lender did not both sign a written acknowledgment as to the fair market value of the Property on the closing date.  50(a)(6)(Q)(ix);

    b. The Loan was not closed at the office of the lender, an attorney at law, or title company, (50(a)(6)(N)).

---

[1] All section references refer to the Texas Constitution, art. XVI (Effective: January 1, 2018 to present).

Copy from re:SearchTX

13.    Plaintiff sent a notice to cure to Defendant Amerisave on April 26, 2022. Defendant failed to cure within 60 days.

## V.    CAUSES OF ACTION

**A.    DECLARATORY JUDGMENT RELATED TO TEXAS CONSTITUTION, ART. XVI, §50(a)(6)**

14.    Plaintiffs hereby adopt by reference each and every paragraph above as if fully and completely set forth herein.

15.    This Court is vested with the power to declare and adjudicate the rights and other legal relationships of the parties to this action.  As the borrower and current owner, Plaintiff is an interested party regarding the Loan.  Plaintiff's rights, status, and legal relations in regarding the Property and the Loan are in question.  Plaintiff seeks a declaration of the rights, status, and other legal relations between all parties as it relates to the Loan.

16.    Plaintiff requests a declaration that (a) declares that the Loan is not compliant with the requirements of the Texas Constitution, art. XVI, section 50(a)(6); (b) that violations of the Texas Constitution, art. XVI, section 50(a)(6) are uncured causing the loan to be void; (c) Defendants' time to cure violation of the Texas Constitution, art. XVI, section 50(a) has expired; and (d) declares in Plaintiffs' favor all other matters necessary to completely resolve uncertainty in the rights, status, and legal relations in general under the Loan, Loan assignments, Property, and Texas law.

**B.    QUIET TITLE RELATED TO TEXAS CONSTITUTION, ART. XVI, §50(a)(6)**

17.    Plaintiff hereby adopts by reference each and every paragraph above as if fully and completely set forth herein.

18.    Plaintiff has an interest in the Property because he is the current legal owner of the Property with the right to possess and control the Property.

Copy from re:SearchTX

19.     Defendants claim an interest in the Property by virtue of the Loan and Loan transfers.

20.     Defendants' interest in the Property, while it may be valid on their face, is actually void and unenforceable due to uncured violations of the Texas Constitution.

**C.      BREACH OF CONTRACT RELATED TO TEXAS CONSTITUTION, ART. XVI, §50(a)(6)**

21.     Plaintiff hereby adopts by reference each and every paragraph above as if fully and completely set forth herein.

22.     This case features a home equity loan. Plaintiff and Defendants are the parties to the Loan contract. The Loan is a valid contract by offer and acceptance.

23.     Plaintiff is not in breach of the Loan.

24.     The Loan documents specifically incorporate the requirements of the Texas Constitution, art. XVI, § 50(a)(6). *See* Exhibit 1 at ¶ 19 ("It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.").

25.     By failing to obtain both the borrower and the lender's signature on the acknowledgment of fair market value and by not closing at a constitutionally compliant location, Defendants have breached the security instrument by not complying with certain provisions of the Texas Constitution applicable to home equity loans.

26.     Defendants further breached the security instrument by failing to correct their failure to comply. The Defendants must comply with the Loan documents and the Texas Constitution, art. XVI, §50(a)(6)(Q)(x) by effecting a timely cure for any and all alleged violations of which the Defendants were previously noticed.  The relevant cure period is 60 days.

27.     Defendants failed to cure their violations of the Texas Constitution, as specified above. The remedy, contemplated by both the security instrument and the Texas Constitution is forfeiture

Copy from re:SearchTX

of all principal and interest. *See* Texas Const. art. XVI, sec. 50(a)(6)(Q)(x) ("the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to correct the failure to comply[.]"); *see* Exhibit 1 at ¶ 19 ("Lender shall forfeit all principal and interest of the Extension of Credit only if (a) Lender receives said notice [to cure], the failure to comply may be corrected by one of the methods set forth in Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution, and Lender fails to correct the failure to comply within sixty (60) days after it receives said notice[.]").

## VI. TRIAL BY JURY

Plaintiff demands a trial by jury on all issues.

## VII. ATTORNEY FEES

Plaintiff has retained the services of the undersigned counsel of record, and accordingly, sues for the recovery of reasonable attorney fees and costs pursuant to Tex. Civ. Prac. & Rem. Code § 37.009 and the Loan documents.

## PRAYER FOR RELIEF

By way of their Petition, Plaintiffs pray for:

- Judgment in favor of Plaintiffs on all counts;

- General and Economic Damages as allowed by the Loan and the Texas Constitution;

- An award of reasonable attorney's fees and costs under Tex. Civ. Prac. and Rem. Code §37.009 and the Loan documents;

- Pre-judgment and post judgment interest on such monetary relief;

- For declaratory relief, as more specifically requested above;

- For quiet title;

- After trial or hearing on the merits, a permanent injunction forever preventing interference with Plaintiffs' ownership and quiet and peaceful use and possession of the Property.

Copy from re:SearchTX

- Such other and further relief as Plaintiffs deem themselves entitled.

Respectfully submitted,

**JEFFREY JACKSON & ASSOCIATES, PLLC**

By: */s/ Charles "Danny" Brooks*
    **Jeffrey C. Jackson**
    *Attorney-in-Charge*
    Texas State Bar No. 24065485
    **Charles "Danny" Brooks**
    Texas State Bar No. 24126064
    2500 E. TC Jester Blvd., Ste. 285
    Houston, TX 77008
    Tel. 713-861-8833
    Fax.713-682-8866
    jeff@jjacksonllp.com
    danny@jjacksonllp.com

ATTORNEYS FOR PLAINTIFFS

Copy from re:SearchTX

## ELECTRONICALLY RECORDED

### OFFICIAL PUBLIC RECORDS



KRISTA BARTSCH, County Clerk

Bastrop Texas

February 11, 2022 08:17:01 AM  **202202921**
FEE: $94.00
DTRUST

After recording please mail to:

AMERISAVE MORTGAGE CORPORATION
[Company Name]

_____
[Name of Natural Person]

3525 PIEDMONT RD NE, 8 PIEDMONT CENTER, SUITE 600
[Street Address]

ATLANTA, GEORGIA 30305
[City, State, Zip Code]

_____ [Space Above This Line for Recording Data] _____   112154357   2-9

**THIS SECURITY INSTRUMENT SECURES AN EXTENSION OF CREDIT THAT IS THE TYPE OF CREDIT DEFINED BY SUBSECTION (a)(6) OF SECTION 50, ARTICLE XVI OF THE TEXAS CONSTITUTION.**

# TEXAS HOME EQUITY SECURITY INSTRUMENT
## (First Lien)

Loan Number: 17233514

**This Security Instrument is not intended to finance Borrower's acquisition of the Property.**

**MIN:** 100277210172335142

**MERS Phone: 888-679-6377**

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)**  **"Security Instrument"** means this document, which is dated   FEBRUARY 4, 2022                , together with all Riders to this document.
**(B)**  **"Borrower"** is   WADE HEIMANN, AN UNMARRIED MAN.


Borrower is the grantor under this Security Instrument.
**(C)**  **"Lender"** is   AMERISAVE MORTGAGE CORPORATION

_____

TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044.1  1/01 (rev. 01/18)                         Page 1 of 17

☆DocMagic

<span style="color:red">EXHIBIT 1</span>

Copy from re:SearchTX

Lender is a GEORGIA CORPORATION                                            organized
and existing under the laws of GEORGIA
Lender's address is 3525 PIEDMONT RD NE, 8 PIEDMONT CENTER, SUITE 600, ATLANTA,
GEORGIA 30305

Lender includes any holder of the Note who is entitled to receive payments under the Note.

**(D)** **"Trustee"** is SCOTT R VALBY
Trustee's address is 1700 WEST LOOP SOUTH, SUITE 200, HOUSTON, TEXAS 77027

**(E)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** **"Note"** means the promissory note signed by Borrower and dated FEBRUARY 4, 2022
The Note states that Borrower owes Lender ONE HUNDRED SEVENTY THOUSAND AND 00/100
                                        Dollars (U.S. $ 170,000.00       ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
MARCH 1, 2052

**(G)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** **"Extension of Credit"** means the debt evidenced by the Note, as defined by Section 50(a)(6), Article XVI of the Texas Constitution and all the documents executed in connection with the debt.

**(I)** **"Riders"** means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

- [ ] Texas Home Equity Condominium Rider
- [ ] Texas Home Equity Planned Unit Development Rider
- [ ] Other:

**(J)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** **"Escrow Items"** means those items that are described in Section 3.

**(N)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

---

TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044.1  1/01 (rev. 01/18)                Page 2 of 17                ☆ DocMagic

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Extension of Credit does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Extension of Credit, and all extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described Property located in the

COUNTY            of            BASTROP            :
*[Type of Recording Jurisdiction]*            *[Name of Recording Jurisdiction]*

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

which currently has the address of   137 LITTLE SANDY DR

                                                                            *[Street]*

ELGIN                              Texas   78621      ("Property Address"):
*[City]*                              *[Zip Code]*

TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"; provided however, that if the Property includes both homestead property and property that is not homestead property, the Property is limited solely to homestead property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution. If no part of the Property is homestead property, the homestead protections of Section 50, Article XVI of the Texas Constitution are not applicable to this Extension of Credit. Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044.1  1/01 (rev. 01/18)                              Page 3 of 17                              ☆DocMagic

Copy from re:SearchTX

Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Extension of Credit current. Lender may accept any payment or partial payment insufficient to bring the Extension of Credit current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payment in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Extension of Credit current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied or returned to Borrower earlier, such funds may be applied to the outstanding principal balance under the Note immediately prior to foreclosure without abandoning any acceleration of the Note. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." At origination or at any time during the term of the Extension of Credit, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's

TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044.1  1/01 (rev. 01/18)         Page 4 of 17

☆ DocMagic

Copy from re:SearchTX

obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Extension of Credit.

5.    **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Extension of Credit. The insurance

TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044.1  1/01 (rev. 01/18)                    Page 5 of 17

✲DocMagic

Copy from re:SearchTX

carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.   Lender may require Borrower to pay, in connection with this Extension of Credit, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters.  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim.  The 30-day period will begin when the notice is given.  In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property.  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.**  Borrower now occupies and uses the Property as Borrower's Texas homestead and shall continue to occupy the Property as Borrower's Texas homestead for at least one year after the date of this Security

☆ DocMagic

Copy from re:SearchTX

Instrument, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower's actions shall constitute actual fraud under Section 50(a)(6)(C), Article XVI of the Texas Constitution and Borrower shall be in default and may be held personally liable for the debt evidenced by the Note and this Security Instrument if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan or any other action or inaction that is determined to be actual fraud. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as a Texas homestead, the representations and warranties contained in the Texas Home Equity Affidavit and Agreement, and the execution of an acknowledgment of fair market value of the property as described in Section 27.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9. No powers are granted by Borrower to Lender or Trustee that would violate provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution or other Applicable Law.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

---

TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044.1  1/01 (rev. 01/18)                    Page 7 of 17

✦ DocMagic

Copy from re:SearchTX

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding which is not commenced as a result of Borrower's default under other indebtedness not secured by a prior valid encumbrance against the homestead, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of

---

☆ DocMagic

Copy from re:SearchTX

Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Security Instrument Execution; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any person who signs this Security Instrument, but does not execute the Note: (a) is signing this Security Instrument only to mortgage, grant and convey the person's interest in the Property under the terms of this Security Instrument and to comply with the requirements of Section 50(a)(6)(A), Article XVI of the Texas Constitution; (b) is not obligated to pay the sums secured by this Security Instrument and is not to be considered a guarantor or surety; (c) agrees that this Security Instrument establishes a voluntary lien on the homestead and constitutes a written agreement evidencing the person's consent to such lien; and (d) agrees that Lender and Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Note. Borrower further represents, covenants, and agrees that each owner of the Property and each owner's spouse has consented to the voluntary lien on the homestead that is being established by this Security Instrument.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Extension of Credit Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Extension of Credit is subject to a law which sets a limit on the amount of Extension of Credit charges, then all agreements between Lender and Borrower are expressly limited so that any Extension of Credit charges collected or to be collected (other than interest, bona fide discount points used to buy down the interest rate, and any excluded charges listed in Section 50(a)(6)(E)(i)-(iv) of the Texas Constitution) from Borrower, the owner of the Property, or the owner's spouse in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit are hereby amended so that such charges do not exceed, in the aggregate, the highest amount allowed by Applicable Law. If it is finally adjudicated by a court of last resort that the amount of such Extension of Credit charges exceeds the permitted limit, then: (a) any sums already collected from Borrower which exceeded the permitted limit will be refunded to Borrower; and (b) any sums yet to be collected from Borrower which exceed the permitted limit are hereby waived by Lender. Lender will make any refund required by this section by either making a payment to Borrower or by crediting the refund amount to the balance due on the Extension of Credit. Borrower acknowledges that there may be a bona fide dispute with regard to whether such Extension of Credit charges exceed in the aggregate a permitted limit and agrees that Lender will not have received adequate notice that such Extension of Credit charges exceed the permitted limit, and will have no obligation to refund any excess, unless and until that fact has been finally adjudicated by a court of last resort. **The Lender's payment or credit of any such refund will extinguish any right of action or defense to foreclosure Borrower might have arising out of such overcharge.**

This Section 13 will supersede any inconsistent provision of the Note or this Security Instrument.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires

TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044.1  1/01 (rev. 01/18)                                    Page 9 of 17

☆ DocMagic

Copy from re:SearchTX

otherwise.   The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.   Borrower shall promptly notify Lender of Borrower's change of address.   If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.   There may be only one designated notice address under this Security Instrument at any one time.   Any notice to Lender shall be given by delivering it or by mailing it by first class mail (but, by certified mail if the notice is given pursuant to Section 19) to Lender's address stated herein unless Lender has designated another address by notice to Borrower.   Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.   If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15.    Governing Law; Severability; Rules of Construction.**  This Security Instrument shall be governed by federal law and the laws of Texas.   All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.   Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.   In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument:  (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16.    Borrower's Copies.**  At the time the Extension of Credit is made, Borrower shall receive a copy of the final loan application and all executed documents signed by Borrower at closing related to the Extension of Credit.

**17.    Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.   However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.   The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument.   If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18.    Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.   Those conditions are that Borrower:  (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses, insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.   Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn

---

Copy from re:SearchTX

upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance; Lender's Right-to-Comply.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Extension of Credit is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. For example, Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution, generally provides that a lender has 60 days to comply with its obligations under the extension of credit after being notified by a borrower of a failure to comply with any such obligation. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.

All agreements between Lender and Borrower are hereby expressly limited so that in no event shall any agreement between Lender and Borrower, or between either of them and any third party, be construed to limit Lender's right or time period to correct any failure to comply with the provisions of Section 50(a)(6), Article XVI of the Texas Constitution to the fullest extent allowed by Applicable Law. As a precondition to taking any action premised on a failure of Lender to comply with its obligations under the Extension of Credit, Borrower will advise Lender of the noncompliance by a notice given as required by Section 14, and will give Lender at least 60 days after such notice has been received by Lender to comply. Except as otherwise required by Applicable Law, Lender shall forfeit all principal and interest of the Extension of Credit only if: (a) Lender receives said notice, the failure to comply may be corrected by one of the methods set forth in Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution, and Lender fails to correct the failure to comply within sixty (60) days after it receives said notice; (b) the Extension of Credit is made by a person other than a person described under Section 50(a)(6)(P), Article XVI of the Texas Constitution; or (c) each owner of the Property and each owner's spouse has not consented to the lien established by this Security Instrument and each owner and each owner's spouse who did not initially consent does not subsequently consent. Borrower will cooperate in reasonable efforts to correct any failure by Lender to comply with Section 50(a)(6), Article XVI of the Texas Constitution, including in reasonable efforts to obtain the subsequent consent of any owner or owner's spouse who does not initially consent to the lien established by this Security Instrument.

In the event that, for any reason whatsoever, any obligation of Borrower or of Lender pursuant to the terms or requirements hereof or of any other loan document shall be construed to violate any of the provisions of the Texas

---

Copy from re:SearchTX

Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then any such obligation shall be subject to the provisions of this Section 19, and the document may be reformed, by written notice or written acknowledgment from Lender, without the necessity of the execution of any amendment or new document by Borrower, so that Borrower's or Lender's obligation shall be modified to conform to the Texas Constitution, and in no event shall Borrower or Lender be obligated to perform any act, or be bound by any requirement which would conflict therewith.

It is the express intention of Lender and Borrower to structure this Extension of Credit to conform to Applicable Law and, specifically, to the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Note, this Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by Applicable Law or does not comply with Section 50(a)(6), Article XVI of the Texas Constitution, then any such promise, payment, obligation or provision is hereby reduced to the limit of such validity, eliminated as a requirement if necessary for compliance with such law, or reformed if necessary to comply with such law without the necessity of the execution of any amendment or the delivery of any other document by Borrower or Lender.

Lender's right to comply as provided in this Section 19 shall survive the payoff of the Extension of Credit. The provision of this Section 19 will supersede any inconsistent provision of the Note or this Security Instrument.

20.    **Hazardous Substances.**  As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

21.    **Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court**

TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044.1  1/01 (rev. 01/18)                                    Page 12 of 17

✦DocMagic

Copy from re:SearchTX

action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence.

The lien evidenced by this Security Instrument may be foreclosed upon only by a court order. Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution ("Rules"), as amended from time to time, which are hereby incorporated by reference. The power of sale granted herein shall be exercised pursuant to such Rules, and Borrower understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for Borrower in a judicial proceeding.

22. **Power of Sale.** It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by law. Accordingly, Lender and Trustee shall have all the powers provided herein except insofar as may be limited by the Texas Supreme Court. To the extent the Rules do not specify a procedure for the exercise of a power of sale, the following provisions of this Section 22 shall apply, if Lender invokes the power of sale. Lender, its designee, or Trustee shall give notice of the date, time, place and terms of sale by posting and filing the notice as provided by Applicable Law. Lender or its designee shall mail a copy of the notice of sale to Borrower in the manner prescribed by Applicable Law. Sale shall be public occurring between the hours of 10 a.m. and 4 p.m. on a date and at a location permitted by Applicable Law. The time of sale must begin at the time stated in the notice of sale or not later than three hours after the stated time. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale. In the event of any conflict between such procedure and the Rules, the Rules shall prevail, and this provision shall automatically be reformed to the extent necessary to comply.

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. **Release.** Within a reasonable time after termination and full payment of the Extension of Credit, Lender shall cancel and return the Note to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Owner shall pay only recordation costs. OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF LENDER'S OBLIGATIONS UNDER SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.

24. **Non-Recourse Liability.** Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder

---

☆DocMagic

Copy from re:SearchTX

thereof upon payment, and regardless of whether the lien established by this Security Instrument is held to be invalid. Borrower agrees that any statute of limitations related to a cause of action or right to foreclose based on such subrogated rights, superior title, liens, and equities are hereby tolled to the extent necessary until, at the earliest, a final adjudication by a court of last resort that the lien established by this Security Instrument is invalid. Borrower further agrees that Lender shall have the same rights and powers provided in Sections 21 and 22 of this Security Instrument in connection with any such subrogated rights, superior title, liens, and equities as Lender has in connection with the lien established by this Security Instrument.

Subject to the limitation of personal liability described below, each person who signs this Security Instrument is responsible for ensuring that all of Borrower's promises and obligations in the Note and this Security Instrument are performed.

Borrower understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Note is given without personal liability against each owner of the Property and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the owner of the Property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, then, subject to Section 12, Borrower will be personally liable for the payment of any amounts due under the Note or this Security Instrument. This means that a personal judgment could be obtained against Borrower, if Borrower fails to perform Borrower's responsibilities under the Note or this Security Instrument, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting Borrower's other assets to satisfaction of the debt.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 24 shall not impair in any way the lien of this Security Instrument or the right of Lender to collect all sums due under the Note and this Security Instrument or prejudice the right of Lender as to any covenants or conditions of the Note and this Security Instrument.

**25.  Proceeds.**  The owner of the Property shall not be required to apply the proceeds of the Extension of Credit to repay another debt, unless such debt, if any, is a debt secured by the Property or a debt to another lender. If proceeds of the Extension of Credit are being applied to a debt due to Lender and not secured by the Property, it is being done voluntarily by the owner of the Property and at the owner's request. Lender would make the Extension of Credit regardless of whether any proceeds are being applied to a debt due to Lender and not secured by the Property.

**26.  No Assignment of Wages.**  The owner of the Property is not assigning wages, and shall not be required to assign wages, as security for the Extension of Credit.

**27.  Acknowledgment of Fair Market Value.**  Lender and Borrower have executed a written acknowledgment as to the fair market value of Borrower's Property on the date the Extension of Credit is made. The fair market value stated in the written acknowledgment is correct and is the value estimate in an appraisal or evaluation of the Property that was prepared in accordance with a state or federal requirement applicable to an extension of credit under Section 50(a)(6), Article XVI, Texas Constitution. The principal amount of the Extension of Credit, when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the Property, does not exceed eighty percent (80%) of the value stated in the executed acknowledgment. Borrower understands and agrees that Lender and its successors and assigns are relying upon Borrower's representations regarding the fair market value of the Property as additional consideration for making or purchasing the Extension of Credit, and that such representations are material. Borrower represents, warrants, and agrees that such representations are being made on all information known to Borrower and Lender at this time, and that Borrower may not later assert a different fair market value of the Property, even if such assertion is based on information discovered by Borrower after the Extension of Credit is made.

☆DocMagic

Copy from re:SearchTX

**28.   Substitute Trustee; Trustee Liability.**  All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together.  Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing.  Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct.  Trustee shall not be liable for any act or omission unless such act or omission is willful.

**29.   Acknowledgment of Waiver by Lender of Additional Collateral.**  Borrower acknowledges that Lender waives all terms in any of Lender's loan documentation (whether existing now or created in the future) which (a) create cross default; (b) provide for additional collateral; (c) create personal liability for any Borrower (except in the event of actual fraud), for the Extension of Credit; and/or (d) allow the Extension of Credit to be accelerated because of a decrease in the market value of the Property or because of a default under other indebtedness not secured by a prior valid encumbrance against the Property.  This waiver includes, but is not limited to, any (a) guaranty; (b) cross collateralization; (c) future indebtedness; (d) cross default; and/or (e) dragnet provisions in any loan documentation with Lender.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044.1  1/01 (rev. 01/18)                    Page 15 of 17

✦DocMagic

Copy from re:SearchTX

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY.  YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THIS EXTENSION OF CREDIT WITHOUT PENALTY OR CHARGE.

_____(Seal)
WADE HEIMANN                    -Borrower


_____      _____
Witness                        Witness

☆DocMagic

Copy from re:SearchTX

———————— [Space Below This Line For Acknowledgment] ————————

The State of __TEXAS__

County of ~~BASTROP~~ HA *Travis*

Before me, *Hunter Patrick Adams Notary Public*,
(here insert the name and character of the notarizing officer)

on this day personally appeared __WADE HEIMANN__

_____

_____

known to me (or proved to me on the oath of _____

or through _____ *DL* )
(description of identity card or other document)

to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __4th__ day of __FEBRUARY, 2022__.

```
HUNTER PATRICK ADAMS
Notary Public, State of Texas
Comm. Expires 11-04-2024
Notary ID 13270674-9
```

(Notary Public Signature)

(SEAL)

Loan Originator: KELSEY ANN CHRISTOFFERSON, NMLSR ID 1864681
Loan Originator Organization: AMERISAVE MORTGAGE CORPORATION, NMLSR ID 1168

TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044.1 1/01 (rev. 01/18)          Page 17 of 17          ☆ DocMagic

Copy from re:SearchTX

Legal description

Lots 660 and 661, ELGIN OAKS SEC. TWO, an addition to Bastrop County, Texas, according to the amended replat, recorded in Plat Book 2, Page 293B, Plat Records of Bastrop County, Texas. FOR INFORMATIONAL PURPOSES ONLY Commonly known as 137 Little Sandy Dr, Elgin Tx 78621 Parcel Number 38587

Copy from re:SearchTX



Electronically Filed 8/8/2022 4:19 PM
Sarah Loucks, District Clerk
Bastrop County, Texas
By: Sharon Schimank, Deputy

2500 Tanglewilde, Suite 345
Houston, Texas 77063
P 713 861 8833
F 713 682 8866

Jeffrey C. Jackson
jeff@jjacksonllp.com

August 8, 2022

<u>Via E-File</u>
Bastrop County District Clerk
804 Pecan Street
Bastrop, Texas 78602

**Re:**   **Request for Issuance of Citations**
Cause No. 2152-335; *Wade Heimann v. Amerisave Mortgage Corporation, et al.,* in the 335th District Court of Bastrop County, Texas

Dear Clerk:

Please accept this request for preparation of citations as to the following defendants:

**Amerisave Mortgage Corporation**
**Dovenmuehle Mortgage, Inc.**

Payment for the issuance of citations in the amount of $16.00 is being made contemporaneously with this e-filing. Once your office has prepared the citations, please e-mail them to jeff@jjacksonllp.com and my office will coordinate with our process server to have the citations served on these defendants.

Should you have any questions or concerns, please contact my office at 713-861-8833.

Regards,

**JEFFREY JACKSON & ASSOCIATES, PLLC**

*/s/      Jeffrey C. Jackson*
**JEFFREY C. JACKSON**

ATTORNEY FOR PLAINTIFF
WADE HEIMANN

www.jjacksonllp.com

Copy from re:SearchTX

Electronically Filed 8/22/2022 7:24 PM
Sarah Loucks, District Clerk
Bastrop County, Texas
By: Sharon Schimank, Deputy

## CAUSE NO. 2152-335

| | | |
|---|---|---|
| WADE HEIMANN | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff. | § | |
| VS. | § | |
| | § | 335TH JUDICIAL DISTRICT |
| AMERISAVE MORTGAGE CORPORATION, | § | |
| DOVENMUEHLE MORTGAGE, INC. AND FEDERAL | § | |
| HOME LOAN MORTGAGE CORPORATION | § | |
| Defendant. | § | BASTROP COUNTY, TEXAS |

### AFFIDAVIT OF SERVICE

On this day personally appeared Andrew Swatzell who, being by me duly sworn, deposed and said:

"The following came to hand on August 9, 2022, 2:13 PM,

CITATION
PLAINTIFF'S ORIGINAL PETITION
EXHIBIT "1",

and was executed at 211 E 7TH ST STE 620, AUSTIN, TX 78701 within the county of TRAVIS at 2:30 PM on August 15, 2022, by delivering a true copy to the within named

AMERISAVE MORTGAGE CORPORATION
BY AND THROUGH ITS REGISTERED AGENT CORPORATION SERVICE COMPANY D/B/A CSC-LAWYERS
INCORPORATING SERVICE COMPANY BY DELIVERING TO ITS DESIGNATED AGENT NEISHA GROSS

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

Andrew Swatzell
PSC-18592 Exp. 09/30/2022

BEFORE ME, a Notary Public, on this day personally appeared Andrew Swatzell, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are within his or her personal knowledge and are true and correct.

SUBSCRIBED AND SWORN TO ME ON AUGUST 17, 2022

Notary Public, State of Texas

CARLY SWATZELL
Notary Public, State of Texas
Comm. Expires 09-14-2025
Notary ID 133330082

7495225

Copy from re:SearchTX

# CITATION
## CAUSE#2152-335

**CLERK OF THE COURT**
Sarah Loucks, District Clerk
P.O. Box 770
804 Pecan Street
Annex Building, First Floor
Bastrop, TX 78602

### THE STATE OF TEXAS

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

To: Amerisave Mortgage Corporation
Registered Agent, CSC-Lawyer's Incorporating Service Company
211 E. 7th Street, Suite 260
Austin, TX. 78701, Defendant

GREETINGS: You are commanded to appear by filing a written answer to the PLAINTIFF'S ORIGINAL PETITION of Petitioner at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service hereof, before the 335th District Court of Texas, at the courthouse in BASTROP, Texas. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

 A copy of the Petition of the Petitioner accompanies this citation, in cause number 2152-335 styled:

Wade Heimann vs. Amerisave Mortgage Corporation, Dovenmuehle Mortgage, Inc., AND Federal Home Loan Mortgage Corporation

filed in said court on the on this the 4th day of August, 2022

Petitioner is represented by:

CHARLES DANNY BROOKS
JEFFREY JACKSON & ASSOCIATES PLLC
2500 E. TC JESTER BLVD., STE. 285
HOUSTON, TX. 77008

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office in Bastrop, Texas, this the 9th day of August, 2022

Sarah Loucks
District Clerk, Bastrop County
P.O. Box 770
Bastrop, Texas 78602
By: /s/ Sharon Schimank, Deputy

( ) IF CHECKED, ATTACHED TO THIS CITATION IS DISCOVERY NOT FILED WITH CLERK PURSUANT TO
TRCP 191.4

Copy from re:SearchTX

# RETURN OF SERVICE

Cause: 2152-335
Executed when copy is delivered:
This is a true copy of the original citation, was delivered to defendant _____, on the _____ day of _____, 20_____.

_____, Officer

_____, County, Texas

By:_____, Deputy

**ADDRESS FOR SERVICE:**
Defendant: Amerisave Mortgage Corporation
Registered Agent, CSC-Lawyer's Incorporating Service Company
211 E. 7th Street, Suite 260
Austin, TX.  78701

## OFFICER'S RETURN

Came to hand on the _____ day of _____, 20____, at _____, o'clock ____.m., and executed in _____ County, Texas by delivering to each of the within named defendants in person, a true copy of this Citation with the date of delivery endorsed thereon, together with the accompanying copy of the plaintiff's petition, at the following times and places, to-wit:

| Name | Date/Time | Place, Course and Distance from Courthouse |
|---|---|---|
| | | |

And not executed as to the defendant(s), _____

The diligence used in finding said defendant(s) being: _____

and the cause or failure to execute this process is: _____

and the information received as to the whereabouts of said defendant(s) being: _____

**FEES:**
Serving Petition and Copy $_____
Total                              $_____

_____, Officer

_____, County, Texas

By:_____, Deputy

**Affiant**
<u>COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.</u>
**In accordance with Rule 107:** The officer or authorized person who serves, or attempts to serve, a citation shall sign the return.  The signature is not required to be verified.  If the return is signed by a person other than a sheriff, constable or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:
My name is _____, my date of birth is _____, and my address is _____
    (First, Middle, Last)

_____.

(Street, City, Zip)

I DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT.

Executed in _____County, State of _____, on the _____day of _____.

_____
Declaring/Authorized Process Server

_____
(Id # & expiration of certification)

Copy from re:SearchTX

Electronically Filed 8/19/2022 10:08 AM
Sarah Loucks, District Clerk
Bastrop County, Texas
By: Becky Nelson, Deputy

## CAUSE NO. 2152-335

| | | |
|---|---|---|
| WADE HEIMANN | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| VS. | § | |
| | § | 335TH JUDICIAL DISTRICT |
| AMERISAVE MORTGAGE CORPORATION, | § | |
| DOVENMUEHLE MORTGAGE, INC. AND FEDERAL | § | |
| HOME LOAN MORTGAGE CORPORATION | § | |
| Defendant. | § | BASTROP COUNTY, TEXAS |

### AFFIDAVIT OF SERVICE

On this day personally appeared **Michael Fennell** who, being by me duly sworn, deposed and said:

"The following came to hand on **August 9, 2022, 2:13 PM,**

**CITATION**
**PLAINTIFF'S ORIGINAL PETITION**
**EXHIBIT "1",**

and was executed at **1999 BRYAN ST STE 900, DALLAS, TX 75201** within the county of **DALLAS** at **11:20 AM** on **August 17, 2022,** by delivering a true copy to the within named

**DOVENMUEHLE MORTGAGE, INC.**
**BY AND THROUGH ITS REGISTERED AGENT, CT CORPORATION SYSTEM**
**BY DELIVERING TO ITS DESIGNATED AGENT, GEORGE MARTINEZ**

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

_____

**Michael Fennell**
**PSC-2558 Exp. 03/31/2023**

BEFORE ME, a Notary Public, on this day personally appeared **Michael Fennell**, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are within his or her personal knowledge and are true and correct.

SUBSCRIBED AND SWORN TO ME ON <u>AUGUST 17, 2022</u>

_____
Notary Public, State of Texas

JEANNE M. THOMPSON
Notary Public, State of Texas
Comm. Expires 07-30-2024
Notary ID 129071289

7495258

Copy from re:SearchTX

# CITATION

**CLERK OF THE COURT**

Sarah Loucks, District Clerk
P.O. Box 770
804 Pecan Street
Annex Building, First Floor
Bastrop, TX 78602

## CAUSE#2152-335

### THE STATE OF TEXAS

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

To: Dovenmuehle Mortgage, Inc.
Registered Agent, CT Corporation System
1999 Bryan Street, Suite 900
Dallas, TX. 75201-3136, Defendant

GREETINGS: You are commanded to appear by filing a written answer to the PLAINTIFF'S ORIGINAL PETITION of Petitioner at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service hereof, before the 335th District Court of Texas, at the courthouse in BASTROP, Texas. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures geneally must be made no later than 30 days after you file your answer with the clerk. Find our more at TexasLawHelp.org.

A copy of the Petition of the Petitioner accompanies this citation, in cause number 2152-335 styled:

Wade Heimann vs Amerisave Mortgage Corporation, Dovenmuehle Mortgage, Inc., AND Federal Home Loan Mortgage Corporation

filed in said court on the on this the 4th day of August, 2022

Petitioner is represented by:

CHARLES DANNY BROOKS
JEFFREY JACKSON & ASSOCIATES PLLC
2500 E. TC JESTER BLVD., STE. 285
HOUSTON, TX. 77008

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office in Bastrop, Texas, this the 9th day of August, 2022

Sarah Loucks
District Clerk, Bastrop County
P.O. Box 770
Bastrop, Texas 78602
By: /s/ Sharon Schimank, Deputy

( ) IF CHECKED, ATTACHED TO THIS CITATION IS DISCOVERY NOT FILED WITH CLERK PURSUANT TO TRCP 191.4

Copy from re:SearchTX

## RETURN OF SERVICE

Cause: 2152-335

Executed when copy is delivered:

This is a true copy of the original citation, was delivered to defendant _____, on the _____ day of _____, 20_____.

_____, Officer

_____, County, Texas

By:_____, Deputy

**ADDRESS FOR SERVICE:**

Defendant: Dovenmuehle Mortgage, Inc.
Registered Agent, CT Corporation System
1999 Bryan Street, Suite 900
Dallas, TX. 75201-3136

### OFFICER'S RETURN

Came to hand on the _____ day of _____, 20____, at _____, o'clock ____.m., and executed in _____ County, Texas by delivering to each of the within named defendants in person, a true copy of this Citation with the date of delivery endorsed thereon, together with the accompanying copy of the plaintiff's petition, at the following times and places, to-wit:

| Name | Date/Time | Place, Course and Distance from Courthouse |
|------|-----------|--------------------------------------------|
|      |           |                                            |

And not executed as to the defendant(s), _____

The diligence used in finding said defendant(s) being: _____

and the cause or failure to execute this process is: _____

and the information received as to the whereabouts of said defendant(s) being: _____

**FEES:**

Serving Petition and Copy $_____
Total                     $_____

_____, Officer

_____, County, Texas

By:_____, Deputy

**Affiant**

COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.

**In accordance with Rule 107:** The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

My name is _____, my date of birth is _____, and my address is _____
          (First, Middle, Last)

_____.
(Street, City, Zip)

I DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT.

Executed in _____County, State of _____, on the _____day of _____.

_____
Declaring/Authorized Process Server

_____
(Id # & expiration of certification)

Copy from re:SearchTX